Maurice B. VerStandig, Esq.
Bar No. MD18071
The Belmont Firm
1050 Connecticut Avenue, NW, Suite 500
Washington, DC 20036
Phone: (202) 991-1101
mac@dcbankruptcy.com
*Proposed Counsel for*
*1416 Eastern Ave NE LLC*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| 945 LONGFELLOW ST NW LLC | ) | Case No. 24-181-ELG |
| | ) | |
| Debtor. | ) | (Chapter 11) |
| | ) | |

**VERIFIED MOTION (i) TO SELL EPONYMOUS REAL PROPERTY;
AND (ii) FOR AUTHORITY – BUT NOT OBLIGATION
– TO ASSUME AND ASSIGN ALL LEASES AND EXECUTORY CONTRACTS**

Comes now 945 Longfellow St NW LLC ("`945LSNL" or the "Debtor") by and through undersigned counsel, pursuant to Section 363 and 365 of Title 11 of the United States Code (the "Bankruptcy Code") and Federal Rules of Bankruptcy Procedure 2002, 6004, and 6006, and moves this Honorable Court for leave to (i) sell the real property, and improvements thereupon, commonly known as 945 Longfellow Street, NW, Washington, DC 20011 (the "Property"); and (ii) for authority – but not the requirement – to assume and assign all unexpired leases and executory contracts (including tenant leases) to the proposed buyer; and in support thereof 945LSNL states as follows:

    **I.**    **Introduction**

This is likely to be a rather short-lived Chapter 11 case. Nearly two months pre-petition, the Debtor entered into a purchase and sale agreement (the "Contract," attached hereto as Exhibit

1

A) to sell the Property to District Housing LLC or its assignee (the "Buyer") for $7,600,000.00. This case was filed so as to stave off a foreclosure of the Property in the intervening time period, but the Buyer has now indicated that it is prepared to close on the sale and, should the Buyer do so, such will yield funds sufficient to pay all claims in full.

Fond of this Honorable Court as 945LSNL may be, a quick sale will beget a quick exit from bankruptcy, with creditors paid in full and equity receiving a healthy distribution of funds. There is thusly no reason to protract this case and, to the contrary, every reason to approve the Contract and allow the Chapter 11 process to rapidly proceed toward proposal of what may be a historically simple plan of reorganization through which all unsecured claims and administrative (including those of the US Trustee, incidental to this sale, and undersigned opposing counsel, incidental to his services herein) are paid in full and remaining funds are disbursed to equity.

**II.    Standard**

The Bankruptcy Code provides, *inter alia*, "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate…" 11 U.S.C. § 363(b)(1).

In assessing such a proposed sale, courts normally consider a variety of factors, including, but not limited to, whether:

> (1) the contract proposed by the Trustee was made at arm's length with a good faith purchaser; (2) the Property was fully and properly marketed; (3) the proposed sale price was the fair value for the Property; and (4) the proposed sale was in the best interest of the estate and comported with the requirements of 11 U.S.C. § 363.

*In re Andresen*, 2006 WL 4481984, at *2 (Bankr. D. Md. 2006).

Further, "[c]ourts generally look to the trustee's business judgment in analyzing asset sales under Section 363(b)." *In re MCSGlobal Inc.*, 562 B.R. 648, 654 (Bankr. E.D. Va. 2017) (citing

*In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *In re Alpha Nat. Res., Inc*., 546 B.R. 348, 356 (Bankr. E.D. Va. 2016).

### III.   Relevant Information

The full Contract is appended hereto and merits thoughtful review by all parties in interest. A non-exhaustive summary of pertinent provisions[1] and contextual facts, however, is helpful to assessment of the instant motion:

1. The Buyer will pay to the Debtor the sum of $7,600,000.00 at closing. Contract at § 1.

2. An earnest money deposit of $200,000.00 has already been paid and is being held by Olympia Title, LLC.

3. While the Contract does provide for a closing date of April 30, 2024, that date has been extended at the request of the Buyer and the Debtor now believes a closing is likely to occur within the next seven (7) days.

4. The Buyer is *not* an insider of the Debtor, is *not* controlled by any family members of the Debtor's principal, and has no legal relationship with the Debtor other than that created by the Contract.

5. While the Debtor is yet to file schedules herein, the Debtor believes the following claims to constitute the whole of its obligations to third parties:

    a. $4,012,688.64, owed to TD Bank, N.A., secured by a first lien on the Property;

---

[1] This summary is for purposes of convenience only, and the Contract may include certain qualifications or contingencies not reflected here. This summary is not intended to supplant the terms of the Contract. To the extent that there is any conflict between this summary and the Contract, the terms of the Contract shall control.

      b.    $18,364.35 owed to Washington Gas & Light Company ("Washington Gas"), secured by a lien filed on January 25, 2024;

      c.    $2,214.00 owed to the DC Department of Buildings (the "DOB"), secured by a lien filed on April 12, 2023;

      d.    $11,719.26 owed to the District of Columbia Water and Sewer Authority ("DC Water"), secured by a lien filed on February 13, 2023;

      e.    An unknown sum, understood to be less than $5,000.00, owed to Massey Property Investors LLC, as and for work done on the Property;

      f.    An unknown sum, understood to be less than $5,000.00, owed to Pro Painting & Remodeling Inc., as and for work done on the Property;

      g.    Property management fees, in a sum of less than $10,000.00, owed to US Realty, Inc., an insider entity; and

      h.    Any incurred-but-unpaid usage fees owed to PEPCO, Washington Gas, and the DC Water, over and above those obligations evidenced by the aforementioned liens.

6.    The computation of the debt to TD Bank, N.A. is based on the foreclosure noticed filed by that institution on April 25, 2024; while it is likely some additional interest has since accrued, and some legal fees have since been incurred, such additional sums are believed to be contextually *de minimis* in nature.

7.    Fees owed to the United States Trustee, on account of the proposed sale and distributions resulting therefrom, are believed to be less than $34,000.00.

8.    Consummation of the sale proposed herein, followed by the proposal of a simplified plan of liquidation, would thusly result in a net surplus to equity in excess of $3,400,000.00.

## IV.     Argument: The Sale Should be Approved

The sale embodied in the Contract is a reasonable exercise of the Debtor's business judgment and merits approval as such. Indeed, this is not a particularly close call – the Debtor is proposing to retire all secured claims within 10 days of seeking bankruptcy protection and to amass monies sufficient to then pay all unsecured claims in full.

Addressing the first of the factors enumerated by the *In re Andresen* Court, the Contract was negotiated at arm's length with a good faith purchaser. The Debtor has no relationship with the Buyer and has simply sought to sell the eponymous asset on the open market. While little is known about the Buyer, the $200,000.00 earnest money deposit certainly suggests a modicum of seriousness and good faith that ought not be overlooked.

Vis a vis the second rigor of the *In re Andresen* Court, the Debtor certainly welcomes anyone to come forth with a higher or better offer on the Property, but equally notes such is immaterial for bankruptcy purposes. So long as the extant Contract is sufficient to pay all claims in full, any detriment occasioned by the informality of marketing will harm only the Debtor's equity interest, not creditors.

Addressing the third criterion, $7.6 million is a fair value for the asset being conveyed under the Contract. The Property is tax assessed at $1,811,370.00 and has a rent roll that produces $22,245.00 in income per month when fully paid. This accordingly puts the sales price at a multiple of just over 28.4, which is extraordinary for a real property asset – especially in a jurisdiction like the District of Columbia where tenant-friendly laws have a generalized tendency to depress the fair market value of apartment buildings. As the Supreme Court of the United States has observed, fair market value is "'what a willing buyer would pay in cash to a willing seller.'" *United States v. Virginia Elec. & Power Co.*, 365 U.S. 624, 633 (1961) (quoting *United States v. Miller*, 317 U.S.

369, 374 (1943); citing *United States v. Commodities Trading Corp.*, 339 U.S. 121, 123 (1950); *United States v. Cors*, 337 U.S. 325, 333 (1949)). Here, the Buyer is a willing buyer and the Debtor is a willing seller.[2]

Finally, the proposed sale *sub judice* is assuredly in the best interest of the estate and, per this motion and the related motion to shorten time being filed herewith, comports with the rigors of Section 363 of the Bankruptcy Code. As discussed above, this sale will bring cash into the estate sufficient to cover all claims in full. It is genuinely difficult to conceive of an argument as to how such would not be in the best interest of the estate.

### V.    The Debtor Should Have the Right – But Not Obligation – to Assume and Assign the Executory Contracts

Sine the Debtor did not contemplate having to seek bankruptcy protection when the Contract was originally negotiated, there did not then exist a prism through which tenant leases could be readily rejected if the Buyer so wished. In a city where residential leases are perpetual regardless of their stated term, the ability to reject such obligations may be a silver lining of 945LSNL having been compelled to seek Chapter 11 relief. As such, the Debtor wishes to give the Buyer the option – at the time of closing but no later – of having the leases (i) assumed and assigned; or (ii) rejected. 945LSNL will no longer have a material stake in the leases once the Property is sold; this is simply a courtesy the Debtor believes ought to be extended to the Buyer.

The assumption and assignment of executory contracts is governed by the same "business judgment" standard as a sale of a debtor's assets. *See, e.g.*, *In re Holmes Envtl., Inc.*, 287 B.R. 363,

---

[2] Additionally, the Debtor's manager will testify as to the fair value of the asset being conveyed, at a hearing on this motion. *See, e.g.*, *Fourth Inv. LP v. United States*, 107 A.F.T.R.2d 2011-599 (S.D. Cal. 2011) ("it is proper for the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert.'") (quoting FRE 701 Advisory Notes to the 2000 Amendments; citing *Stoebner Holdings, Inc. v. Automobili Lamborghini S.P.A.*, 2007 WL 4230878 (D. Haw. 2007)).

389 (Bankr. E.D. Va. 2002) ("Once a contract is found to be executory, it must then be determined whether rejection is advantageous to the debtor. In this determination, the 'sound business judgment rule' is applied. Under this maxim, the same deference is given to a decision to reject an executory contract as is given to other business management actions.") (citing and quoting *In re Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1046-47 (4th Cir. 1985)).

Of equal import, precedent makes clear that where a transaction such as that *sub judice* is contemplated, it is wholly appropriate for a debtor to defer decisions as to assumption and assignment to an asset purchaser. *See, e.g.*, *In re G Survivor Corp.*, 171 B.R. 755, 759 (Bankr. S.D.N.Y. 1994), aff'd sub nom. *John Forsyth Co. v. G Licensing, Ltd.*, 187 B.R. 111 (S.D.N.Y. 1995) ("I find that the ability to designate which contracts it wished to have rejected was a valuable right, for which Fruit Of The Loom bargained."); *In re Ames Dept. Stores, Inc.*, 287 B.R. 112, 126 (Bankr. S.D.N.Y. 2002) ("Committing an estate to an immediate sale and immediate assignment of a lease, on the one hand, or to an immediate sale and possible future assignment, on the other, are differences only in the mechanics, and are simply examples of the nearly infinite ways by which a transaction can be structured if it otherwise makes business sense and involves a proper exercise of business judgment."); *In re ASPC Corp.*, 601 B.R. 766, 799 (Bankr. S.D. Ohio 2019) (rejecting an argument "that giving buyers unfettered discretion to designate executory contracts for assumption and assignment would subvert debtors' business judgment").

In this case, a post-sale Debtor will have no need for any leases or executory contracts. This is a single asset real estate case and the Contract contemplates the sale of that single asset. So some disposition of the tenant leases – and any related service contracts – will need to be had at the time of sale; the Debtor cannot much go on obligated to furnish dwelling units to tenants when the Debtor has sold off all of its dwelling units. (For the avoidance of doubt, this will *not* be a

reinvestment case; assuming the proposed sale is approved and closes, this will be a liquidating Chapter 11.)

It is reasonably anticipated that residential leases will be assumed (insofar as they furnish an income stream to the Buyer) and service contracts will be rejected (insofar as the Buyer will wish to either negotiate new terms or utilize its own favored vendors). But, again, the option ought to belong to the Buyer – especially if any of the tenants appear to be enjoying below-market rental rates or any of the vendors appear to be bound to provide services at below-market rates.

### VI. Conclusion

WHEREFORE, 945LSNL respectfully prays this Honorable Court (i) authorize 945LSNL to enter into the Contract, subject to any higher and better offers; (ii) authorize 945LSNL to permit the Buyer to designate which unexpired leases and executory contracts are assumed and assigned; and (iii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: May 31, 2024    By:    /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com
*Proposed Counsel for the Debtor*

### **VERIFICATION**

I declare under penalty of perjury that the factual recitations in the foregoing motion are true and correct.

*Ali Razjooyan*
Ali Razjooyan
Manager
945 Longfellow St NW LLC

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 31st day of May, 2024, a copy of the foregoing was served electronically upon filing via the ECF system, with copies being sent to all parties receiving electronic notice herein including, *inter alia*, counsel for the United States Trustee.

/s/ Maurice B. VerStandig
Maurice B. VerStandig